[No. 14630.   In Bank.—November 23, 1891.]

JOHN DAGGETT ET AL., CONSTITUTING WORLD'S FAIR COMMISSION, PETITIONERS, v. E. P. COLGAN, CONTROLLER OF STATE, RESPONDENT.

CONSTITUTIONAL LAW— APPROPRIATION FOR WORLD'S FAIR — STATE INSTITUTION. — The act of March 6, 1891, appropriating three hundred thousand dollars to meet the expenses of erecting buildings and maintaining an exhibit of the products of the state of California at the World's Fair Columbian Exposition, to be held at Chicago in 1893, and providing that the appropriation is to be expended and disbursed under the exclusive charge and control of a commission to be appointed by the governer, is valid, and not in conflict with section 22 of article IV. of the constitution, forbidding the appropriation of money to any institution not ·under the exclusive management and control of the state as a state institution.

ID. — PUBLIC USE — AUTHORITY OF STATE GOVERNMENT. — The act makes an appropriation for a public use, and the maintenance of an exhibition of the products of the state falls within the legitimate authority of the state government.

ID. — POWER OF LEGISLATURE — DISCRETION — NECESSITY — PUBLIC WELFARE. —.What is for the public good, and what are public purposes, are questions which the legislature must decide upon its own judgment, in respect to which it is vested with a large discretion which cannot be controlled by the courts, except perhaps where its action is clearly evasive. Its authority is not limited by necessity, but it may make expenditures to subserve the public welfare.

ID. — CELEBRATION OF PUBLIC ANNIVERSARY — POWER OF STATE. — The state possesses the power to appropriate funds for the celebration of the anniversary of important events in the history of the country, and may confer such power upon municipal corporations.

APPLICATION to the Supreme Court for writ of mandate to the state controller. The facts are stated in the opinion of the court.

*E. W. McKinstry* for Petitioners.

*W. H. H. Hart,* Attorney-General, *amicus curiæ.*

*Barham & Bolton,* and *William R. Davis,* for Respondent.

DE HAVEN, J. —This is an original application to this court for a writ of mandate to compel the defendant, as controller, to draw his warrant on the state treasurer, in payment of a claim contracted and audited by the petitioners as members of the California World's Fair Commission, in pursuance of the authority given such commission by an act of the legislature of this state, approved March 6, 1891. (Stats. 1891, p. 24.)

The act provides for the appointment by the governor, of a commission who " shall have the exclusive charge and control of the expenditure of all moneys appropriated by the state of California for the construction of buildings and maintaining an exhibit of the products of the state of California at the World's Fair Columbian Exposition, to be held in the city of Chicago, state of Illinois, in eighteen hundred and ninety-three." By section 3 of the act, the sum of three hundred thousand dollars is appropriated " to meet the expenses of erecting buildings and maintainiug an exhibit of the products of the state of California at the World's Fair Columbian Exposition," at Chicago, and the controller is directed to draw his warrant on the treasury from time to time in favor of such persons as the majority of the commissioners provided for by the act shall direct.

The defendant demurs to the petition, upon the general ground that the facts therein stated do not entitle petitioners to the writ demanded and in support of this demurrer contends, —

1. That the act of the legislature referred to is in con-

flict with that provision of section 22 of article IV. of the constitution which declares that " no money shall ever be appropriated or drawn from the state treasury for the use or benefit of any corporation, association, asylum, hospital, or any other institution not under the exclusive management and control of the state as a state institution, nor shall any grant or donation of property ever be made thereto by the state."

In considering the question thus presented, the court will take judicial notice of the fact that the World's Fair Columbian Exposition, referred to in the statute under consideration, is to be held under and by virtue of the provisions of an act of Congress approved April 25, 1890 (27 U. S. Stats. at Large, 62), and that such exposition will not be conducted under the exclusive management and control of this state as a state institution, but, on the contrary, that the same will be under the general management of the national commission created by that act; and that the chief agency relied upon to effect the design of Congress is a private corporation of the state of Illinois, which is authorized by the act of Congress to charge such entrance and admission fee to such exhibition " as shall be fixed and established by said corporation, subject, however, to such modification, if any, as may be imposed by a majority of said commissioners."

But while conceding these to be the facts, unless the act under consideration makes an appropriation for the use and benefit of the national commission, or in aid of a private corporation, through the instrumentality of which the Exposition is in great part to be conducted, and from the success of which that corporation expects to derive a pecuniary profit, it is clear that the provision of the constitution above quoted, and relied upon by defendant, can have no application. It is claimed by the defendant that the statute under consideration does, in effect, make such an appropriation, but we are not able to find anything in its language which would justify the contention of defendant on this point. On the contrary,

it appears from the act itself that the appropriation is to be expended by the state itself, disbursed by its own agents or officers, and is to be used only for the purpose of "erecting buildings and collecting and maintaining an exhibit of the products of the state of California."

Even if it could be said with any degree of certainty that the private corporation referred to in the act of Congress will increase its receipts because of the fact that the state is to place its products on exhibition, or that it may derive a benefit from the rent of its grounds to the state, or realize other profits, still, this would not affect the question we are considering, or bring the appropriation within the prohibition of the section of the constitution above quoted, as it is apparent that the main object of the statute is not to confer such incidental benefit, but rather to promote what is assumed to be a matter of public concern, and for the public good. In every public expenditure, individuals derive incidental aid and benefit, in the sense that they are paid for services rendered, or articles furnished to the state in the prosecution of the public improvement or business of the state, and the expenditure contemplated by this act will not be exceptional in this respect; but there is nothing upon the face of the statute to indicate that the private corporation referred to, or any individual, will or can, if the appropriation is honestly expended, receive one dollar as a gratuity or by way of assistance, or except in return for something of value which the officers charged with its disbursement shall deem necessary to secure in order to effect the general purpose and object of the act.

2. The defendant further contends that the statute is unconstitutional for the reason that the appropriation thereby made is not for a public use, such as the state is authorized to make; that the maintenance of an exhibition of the products of the state in the manner contemplated does not fall within the legitimate authority of the state government.

In passing upon this proposition, it is necessary to

bear in mind that what is for the public good, and what are public purposes, " are questions which the legislature must decide upon its own judgment, in respect to which it is vested with a large discretion which cannot be controlled by the courts, except, perhaps, where its action is clearly *evasive*. . . . . Where the power which is exercised is legislative in its character, the courts can enforce *only* those limitations which the constitution imposes; not those implied restrictions which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism, and sense of justice of their representatives." (Cooley's Constitutional Limitations, 154.)

It is undoubtedly true that public money can be rightfully expended only for public purposes, but as was well said by that eminent jurist, Judge Cooley, in delivering the opinion of the court in *People* v. *Salem*, 20 Mich. 452, 4 Am. Rep. 400: "*Necessity* alone is not the test by which the limits of state authority in this direction are to be defined, but a wise statesmanship must look beyond the expenditures which are absolutely needful to the continued existence of organized government, and embrace others which may tend to make that government *subserve the general well-being of society*, and advance the present and *prospective happiness and prosperity of the people.*"

In view of these principles of constitutional law, which are so well settled as to be placed beyond discussion or dispute, it is manifest, we think, that the court is not authorized to declare the act under consideration void, upon the theory that the expenditure thereby authorized can in no manner be considered as tending to promote the public welfare, which it is one great object of government to secure. The question whether the public interests of the state would be at all advanced by an exhibition of its products such as is contemplated by the act was an appropriate one for discussion in the halls of the legislature before its enactment, and for the consideration of the governor before approving it, but it is not one for this court to decide, upon the individual views of its members concerning the wisdom or expediency of such legislation.

There is no difference, except in degree, between the appropriation contained in this act and those which for years have been made without any question as to their validity, for the support of the state agricultural fair, and the various district agricultural societies throughout the state. The fact that this exhibit of the products of the state is to be made without the limits of the state does not change its essential character, or make it any less an occasion or purpose in which, in an enlarged sense, it may be said that the people of the state have an interest. So, also, it would be hard to distinguish this appropriation in principle from those appropriations which have been made from time to time for the maintenance of horticultural, viticultural, and other similar commissions. None of these, strictly speaking, are required for the proper administration of the government of the state, and possibly, in the opinion of many, call for an unjustifiable and useless expenditure of money. But the power of the legislature to create such commissions has never been doubted.

We know from the express declaration of the act of Congress authorizing the Columbian Exposition that the purpose of the exposition is to commemorate the four hundredth anniversary of the discovery of America, " by an exhibition of the resources of the United States of America, their development, and of the progress of civilization in the New World"; and that such exhibition is to be of a " national and international character, so that not only the people of the Union and of this continent, but those of all nations, as well, can participate."

We have no doubt that it was fairly a matter within the power of the legislature to determine whether, as a matter of public policy and as tending to advance the best interests of its citizens, this state should join with its sister states, and with the government of the United States, in celebrating in the way suggested the historical event referred to.

It has been held in many cases that a municipal corporation has no authority, under the general powers usually given such corporations, to appropriate money for

the celebration of the anniversary of important events in the history of our country, such as the Fourth of July (*Hodges* v. *Buffalo*, 2 Denio, 110; *Hood* v. *Lynn*, 1 Allen, 103) and the surrender of Cornwallis. (*Tash* v. *Adams*, 10 Cush. 252. See also The Liberty Bill, 23 Fed. Rep. 844.)

These decisions, however, all rest upon the principle that municipal corporations have no powers except such as are specifically granted by the act of incorporation, or are necessary for the purpose of carrying into effect the powers expressly granted. But it has never been doubted that the state could confer upon a city or town the authority to celebrate such important events in the history of the country as appeal to the patriotism or higher sentiments of the people, and to tax their citizens to pay the expense thereof. Thus it was held that the city of Philadelphia had the power under its charter to provide for the entertainment of distinguished visitors upon the occasion of the celebration of the Centennial Anniversary of American Independence. (*Tatham* v. *Philadelphia*, 11 Phila. 276.) So, also, in Massachusetts, by general statutes, the power has been conferred upon towns to celebrate the centennial anniversary of their incorporation (*Hill* v. *East Hampton*, 140 Mass. 381), and also to appropriate money for the celebration of holidays, and for other public purposes. (*Hubbard* v. *Taunton*, 140 Mass. 467.)

These cases are authority for the proposition that the state itself, unless restrained by its constitution, has the power to make appropriations for such purposes, because unless it possesses the power, it could not confer it upon its municipal corporations. Such expenditures are justified under the general power which the state has to provide for the public welfare, — the limits of which are perhaps not capable of exact definition, — and are the same in principle as appropriations made for the building of monuments to commemorate great historical events, or for the erection in public places of the statues of those who by common consent are classed among the patriots or benefactors of the nation.

Undoubtedly this power may be the subject of great

abuse, but this is no argument against its existence. The only protection against reckless and improvident appropriations for public purposes must be found in the character of those intrusted with the power of legislation, and in the integrity and firmness of the chief executive of the state.

The demurrer of defendant is overruled, and a peremptory writ of *mandamus* ordered in accordance with the prayer of petitioners.

GAROUTTE, J., McFARLAND, J., SHARPSTEIN, J., BEATTY, C. J., HARRISON, J., and PATERSON, J., concurred.