[S. F. No. 14285. In Bank.—May 7, 1931.]

SACRAMENTO CHAMBER OF COMMERCE, Petitioner, v. J. H. STEPHENS, as City Treasurer, etc., Respondent.

608

Hinsdale, Otis & Johnson and R. W. Jennings for Petitioner.

Hugh B. Bradford and Joseph L. Knowles for Respondent.

Hill, Morgan & Bledsoe, Stanley S. Burrill, Everett W. Mattoon, County Counsel (Los Angeles), Ray C. McAllister, Deputy County Counsel, Earl Warren, District Attorney (Alameda County), Thomas Whelan, District Attorney (San Diego County), Nowland M. Reid, City Attorney (Long Beach), Bernard Brennan, City Attorney (Glendale), J. J. O'Toole, City Attorney (San Francisco), and Harold P. Huls, City Attorney (Pasadena), *Amici Curiae.*

WASTE, C. J.—Original application for a writ of *mandamus* to be directed to the respondent as treasurer of the city of Sacramento, commanding him to honor a warrant in the sum of $235 in payment of a claim arising out of certain printing done pursuant to the terms of a contract

between the petitioner Sacramento Chamber of Commerce and the city of Sacramento.

According to the terms of the contract, by the provisions of which the obligation of the city shall not exceed a total consideration of $5,000, the Chamber of Commerce, called the "Advertiser", agrees to use "its facilities and its special knowledge and experience" during the term of the contract, which is something less than a year, to "receive and entertain public guests of the City of Sacramento, to assist in public celebrations held by the City of Sacramento at large, to aid and carry on the work of inducing immigration to the City of Sacramento, to exhibit manufactured and other products of the City of Sacramento, and generally to advertise the City of Sacramento", all as in the manner provided in the contract. The contract also provides that the advertiser—the Chamber of Commerce—shall be entitled to payment only for the expense actually paid or incurred by it in carrying out plans approved by the city council, and shall not receive any compensation for its own services in carrying out the contract.

Pursuant to the terms of the contract, petitioner printed 5,000 copies of a booklet entitled "The Key to Sacramento", and distributed 1,000 copies through the United States mail, delivering the remaining copies to the city clerk for the use of the city. Although petitioner's claim, supported by proper vouchers for the actual cost of printing and mailing the copies of the booklet, was duly approved and certified by the proper officials of the city, the respondent city treasurer refuses to pay it, on the ground that it is beyond the right and power of the city to enter into the contract. The cause is submitted on a demurrer to the petition and points and authorities on the legal questions involved.

In executing the contract with the petitioner, the city council adopted a convenient and legal method of carrying out the provisions of section 80 of the charter of the city of Sacramento, which reads as follows: "The Council may appropriate and spend money from the funds of the City for any or all of the following purposes: Reception and entertainment of public guests, assistance of public celebrations held by the City at large, to aid or carry on the work of inducing immigration to the City, to exhibit

manufactured and other products of the City; and generally, for the purpose of advertising the City, provided, however, that the aggregate expenditures for all of said purposes shall not exceed in one fiscal year the sum of two (2) cents on each One Hundred Dollars ($100.00) of the assessed value of property within the City.''

Petitioner alleges that the aggregate expenditures, including the amount of the present claim, from the appropriation of $5,000 does not exceed in the fiscal year 1931 the sum of two cents on each $100 of the assessed value of property within the city of Sacramento. It is the respondent's contention that the contract between the city and petitioner is invalid and void because of an attempted improper delegation to the petitioner of duties enjoined upon, and exercisable only by, the city council. In support thereof, he urges that the powers conferred upon a municipal corporation and its officers involving the exercise of judgment or discretion are in the nature of public trusts and cannot be surrendered or delegated to others. The principle of law relied on by the respondent is fundamental and apparently of universal application. ■ But, while legislative or discretionary powers or trusts devolved by charter or law on a council or governing body, or a specified board or officer, cannot be delegated to others, it is equally well established that ministerial or administrative functions may be delegated to subordinates or agents. (*Holley* v. *County of Orange,* 106 Cal. 420, 424 [39 Pac. 790]. See, also, *First Nat. Bank* v. *Ball,* 90 Cal. App. 709, 713 [266 Pac. 604].)

■ Section 80 of the charter of the city of Sacramento, *supra,* confers upon the city council authority to appropriate and spend public funds, within prescribed limits as to the amount so spent, for the purposes designated. The charter provision is permissive, and not mandatory. It is for the governing body of the city, in the exercise of its discretion, to determine, in the first place, whether or not any public funds shall be appropriated and so expended, and by what means. Respondent's position would undoubtedly be sound if the city council had, by contract or otherwise, undertaken or attempted to delegate or surrender to the petitioner, or any other person or body, its legislative function of determining if it will proceed under the charter

provision, and the amount of public funds that shall be appropriated and disbursed for the specified purposes. That is not this case. The city council having duly exercised its legislative discretion, and determined that the things permitted by the charter to be done should be done, has merely contracted with the petitioner, as an administrative agent, to perform the mechanical and ministerial function of applying and expending certain public funds, in furtherance of the objects for which they were appropriated. The charter provision does not assume to prescribe any method or procedure for the disbursement of the funds appropriated thereunder, and the city council is free to adopt any usual, reasonable and adaptable means for this purpose. (43 C. J. 248, sec. 249 [2].) That petitioner is a suitable and experienced agency for this purpose can hardly be doubted. In 1 Abbott on Municipal Corporations, 196, section 110, it is said: "The exercise of discretionary powers, *as well as the manner of such exercise when not specified by the grant of authority,* is, as indicated by the plain meaning of the words, left to the discretion of the corporation and of its officials having in charge the management of the transaction of the specific act." In *First Nat. Bank* v. *Ball, supra,* the court considered subdivision 33 of section 4041 of the Political Code which, in substance, authorized boards of supervisors to levy a tax "to be used for advertising, exploiting and making known the resources of the county for the purpose of inducing immigration thereto and increasing the trade and commerce of said county, or for the purpose of exhibiting or advertising the agricultural, mineral or other resources of the county. . . . " In the course of the decision the court said that the subdivision "authorizes the board of supervisors to perform such services either by itself or by its agents, duly appointed, or *with whom it has contracted for such purposes*". (Italics added.)

In answer to the contention that the contract between the city and the Chamber of Commerce does not relate to a public purpose, little need be said. In considering a somewhat similar question which arose out of a demand on the state controller to pay a claim contracted and audited by the California World's Fair Commission in connection with the construction of buildings and the maintenance of an exhibit of the products of the state of Califor-

nia at the World's Fair Columbian Exposition held in the city of Chicago, state of Illinois, in 1893, this court said, in *Daggett* v. *Colgan*, 92 Cal. 53, 57 [27 Am. St. Rep. 95; 14 L. R. A. 474, 28 Pac. 51], "that what is for the public good, and what are public purposes, 'are questions which the legislature must decide upon its own judgment, in respect to which it is vested with a large discretion which cannot be controlled by the courts, except, perhaps, where its action is clearly *evasive*. . . . Where the power which is exercised is legislative in its character, the courts can enforce *only* those limitations which the Constitution imposes; not those implied restrictions which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism, and sense of justice of their representatives.' (Cooley's Constitutional Limitations, 154.)"

Furthermore, we are of the view that, by common consent, it is now generally held to be well within a public purpose for any given locality to expend public funds, within due limitations, for advertising and otherwise calling attention to its natural advantages, its resources, its enterprises, and its adaptability for industrial sites, with the object of increasing its trade and commerce and of encouraging people to settle in that particular community.

Respondent's demurrer to the petition is overruled, and the writ is made peremptory.

Richards, J., Shenk, J., Langdon, J., Curtis, J., and Seawell, J., concurred.