747



OFFICE OF THE ATTORNEY GENERAL OF TEXAS
AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Obel L. McAlister, Chairman
Committee on State Affairs
House of Representatives
Forty-ninth Legislature
Austin, Texas

Dear Sir:                    Opinion No. O-6168
                             Re: Constitutionality
                                 of House Bill No.
                                 653.

        Your letter of April 27, 1945, requesting the opin-
ion of this department as to the constitutionality of House
Bill No. 653 is as follows:

        "A question has been raised as to the con-
        stitutionality of House Bill No. 653, intro-
        duced by Mabe and Storey, on the proposition
        that you cannot vote a tax for the purposes
        set out in the Bill that support and maintain
        a Board of County Development, a Board of City
        Development, a Chamber of Commerce, or similar
        organization devoted to the growth, advertise-
        ment, development and improvement of cities or
        towns.

        "As Chairman of the Committee that passed
        this Bill out, I would appreciate an opinion
        from your department at as early date as prac-
        ticable concerning the above pointed out matter."

House Bill No. 653 is as follows:

                    "A Bill
                 "To Be Entitled

        "An Act authorizing any county, city or town now
                or hereafter incorporated under the gen-
                eral laws of this State to organize,
                operate, support and maintain a Board of

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Obel L. McAlister,  page 2

County Development, Board of City Development, Chamber of Commerce, or other similar organization; authorizing the levy of a tax for such purposes, provided such tax levy is authorized by a majority vote of the property tax paying qualified voters of such county, city or town at an election held for such purpose; and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. Any county, city or town now or hereafter incorporated under the general laws of this State, may, in addition to all other powers now possessed by such county, city or town under the general laws of this State, be authorized by proper ordinance passed by its governing authority, to organize, operate, support and maintain a Board of County Development, a Board of City Development, Chamber of Commerce or similar organization devoted to the growth, advertisement, development and improvement of said county, city or town.

"Sec. 2. For the purpose set forth in Section 1, of this Act the governing authority of such county, city or town is hereby authorized to levy a tax not exceeding two cents (2¢) on the One Hundred Dollar valuation of the taxable property of such county, city or town provided such tax levy is first authorized by a majority vote of the property tax paying qualified voters of the county, city or town at an election called and held for such purpose as provided by law.

"Sec. 3. The fact that many counties, cities and towns have no adequately maintained and supported organizations devoted to the growth, advertisement, development and general improvement of said counties, cities or towns and the fact that such an organization would be very beneficial to the growth and general improvement of counties, cities and towns creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills be read on three several days in each House be, and the same is hereby suspended and this Act shall take effect and be in force from and after its passage and it is so enacted.

Honorable Obel L. McAlister, page 3

"COMMITTEE AMENDMENT NO. 1

"Amend House Bill No. 653 by striking out all below the enacting clause and substituting in lieu thereof the following:

"Section 1. Any county of this State, and any city or town now or hereafter incorporated under the general laws of this State, may, in addition to all other powers now possessed by such county, city or town under the general laws of this State, be authorized by proper order passed by the Commissioner's Court of such county, or proper ordinance passed by the governing authority of such city or town, to organize, operate, support and maintain a Board of County Development, a Board of City Development, Chamber of Commerce, or similar organization devoted to the growth, advertisement, development, improvement and promotion of the trade and commerce generally of such county, city or town.

"Sec. 2. For the purpose set forth in Section 1 of this Act, the governing authority of such county, city or town is hereby authorized to levy a tax not exceeding two (2) cents on the One Hundred Dollar valuation of the taxable property of such county, city or town, provided such tax levy is first authorized by a majority vote of the property tax paying qualified voters of the county, city or town at an election called and held for such purpose as provided by law.

"Sec. 3. The fact that many counties, cities and towns have no adequately maintained and supported organizations devoted to the growth, advertisement, improvement and promotion of trade and commerce generally of said counties, cities and towns, and the fact that such an organization would be very beneficial to the growth and general improvement of counties, cities and towns, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage and it is so enacted."

Honorable Obel L. McAllister,   page 4


       After carefully considering your request in connec-
tion with various provisions of the Constitution as mentioned
herein, we cannot categorically answer your question as to
the constitutionality of said House Bill No. 653.  However,
there are serious constitutional questions involved to which
we will direct your attention.

       Section 1 of Article VIII of the State Constitution
provides in part:

       "Taxation shall be equal and uniform."

Section 3 of Article VIII is:

       "Taxes shall be levied and collected by
general laws and for public purposes only."

       Section 52 of Article III of the State Constitution is
in part as follows:

       "The Legislature shall have no power to
authorize any county, city, town or other
political corporation or subdivision of the
State to lend its credit, or to grant public
money or thing of value in aid of, or to any
individual, association or corporation what-
soever. . . ."

       Section 3, Article XI prohibits any county, city or
municipality from making any appropriation or donation or in
any wise loaning its credit to any private corporation or
association.

       It will be noted that House Bill No. 653 expressly
authorizes any county, city or town now or hereafter incorpora-
ted under the general laws of the State to organize, operate,
support and maintain a Board of County Development, Board of
City Development, Chamber of Commerce, or other similar or-
ganization devoted to the growth, advertisement, development
and improvement of said county, city or town.  Should a county,
city or town attempt to aid a Chamber of Commerce or similar
organization acting as an independent association, such act
or acts would contravene Section 52, Article III of the State
Constitution.

       It has been held by the Supreme Court in the case of
Davis et al vs. City of Taylor, et al, 67 S. W. (2d) 1033, that
a home rule city had authority to expend funds for the purpose
of advertising.

Honorable Obel L. McAlister,   page 5

We quote from the case of Davis vs. City of Taylor, supra, as follows:

"Article 8, Section 3, of the Constitution provides:

"'Taxes shall be levied and collected by general laws and for public purposes only.'

"It is well settled that municipal corporations cannot imposes taxes for other than public purposes.

"The amendment to the charter of the city of Taylor set aside certain funds to be devoted to 'the growth, advertisement, development, improvement and increase of the taxable values of said city.'

"In discussing what is a public purpose, McQuillin on Municipal Corporations (2d Ed.) vol. 6, p. 292, § 2532, says: 'What is a public purpose cannot be answered by any precise definition further than to state that if an object is beneficial to the inhabitants and directly connected with the local government it will be considered a public purpose.'

"The Supreme Court of Illinois, in Taylor vs. Thompson, 42 Ill. 9, defines a 'tax for corporate purposes' as follows: 'We may define this phrase to mean a tax to be expended in a manner which shall promote the general prosperity and welfare of the municipality which levies it.'

"It would not be of value now to attempt to thoroughly define or discuss what are public purposes. No exact definition can be made. Suffice it to say that, unless a court can say that the purposes for which public funds are expended are clearly not public purposes, it would not be justified in holding invalid a legislative act or provision in a city charter providing funds for such purposes.

"Cooley's Constitutional Limitations (5th Ed.) p. 155, says: 'But what is for the public good, and what are public purposes, and what does properly constitute a public burden, are questions which the

Honorable Obel L. McAllister,   page 6

legislature must decide upon its own judgment,
and in respect to which it is vested with a large
discretion which cannot be controlled by the courts,
except, perhaps, where its action is clearly eva-
sive, and where, under pretence of a lawful au-
thority, it has assumed to exercise one that is
unlawful.  Where the power which is exercised is
legislative in its character, the courts can en-
force only those limitations which the constitu-
tion imposes; not those implied restrictions which,
resting in theory only, the people have been satis-
fied to leave to the judgment, patriotism, and sense
of justice of their representatives.'

"The principal contention in this suit is that
it is not a public purpose and not a municipal pur-
pose for the city to spend its funds for advertis-
ing the advantages of the city.

"It has generally been held that appropriations
for exhibitions of the resources of a particular
locality at state or national expositions are not
subject to the objection that they are not made for
a public purpose.  The Supreme Court of California,
in the case of Daggett v. Colgan, 92 Cal. 53, 28 P.
51, 52, 14 L. R. A. 474, 27 Am. St. Rep. 95, held that
an appropriation for the purpose of 'erecting build-
ing and collecting and maintaining an exhibit of
the products of the state' at the World's Fair, Colum-
bian Exposition at Chicago in 1893, was not unconsti-
tutional on the ground that it was not for a public
use.  The Kentucky Court of Appeals, in the case of
Norman v. Kentucky Board of Managers, 93 Ky. 537,
20 S. W. 901, 18 L. R. A. 556, held that an appropria-
tion to exhibit the resources of that state at the
same Columbian Exposition was for a public or govern-
mental purpose.  The Supreme Court of Tennessee, in
the case of Shelby County v. Tennessee Centennial
Exposition Company, 96 Tenn. 653, 36 S. W. 694, 33
L. R. A. 717, held that an exhibition of the resources
of a county at a state centennial exposition is a
county purpose within the meaning of a constitutional
provision authorizing taxation for county purposes.
In this last case there was an express grant of power by
the General Assembly to levy such a tax.  We can see
no material difference in the ultimate purpose of an
exhibit of the resources of a particular locality at
an exposition and the more modern method of present-
ing the advantages and opportunities of a city, county,

Honorable Obel L. McAlister, page 7

.or state, through newspaper or magazine advertis-
ing, and similar channels.

"In the recent case of Sacramento Chamber of Com-
merce v. Stephens, 212 Cal. 607, 299 P. 728, the
Supreme Court of California upheld a contract of the
city of Sacramento which provided for the general ad-
vertising of the city. The charter of the city of
Sacramento specifically provided for the appropria-
tion of the funds of the city for such purposes. In
the course of the opinion, Chief Justice Waste uses
the following language:

"'In answer to the contention that the contract
between the city and the Chamber of Commerce does not
relate to a public purpose, little need be said. In
considering a somewhat similar question which arose
out of a demand on the state controller to pay a claim
contracted and audited by the California World's Fair
Commission in connection with the construction of build-
ings and the maintenance of an exhibit of the products
of the state of California at the World's Fair Colum-
bian Exposition held in the city of Chicago, state of
Illinois, in 1893, this court said, in Daggett v.
Colgan, 92 Cal. 53, 57, 28 P.51, 52, 14 L. R. A. 474,
27 Am. St. Rep. 95, "that what is for the public good
and what are public purposes 'are questions which the
legislature must decide upon its own judgment, in res-
pect to which it is vested with a large discretion
which cannot be controlled by the courts, except,
perhaps, where its action is clearly evasive. * * *
Where the power which is exercised is legislative in its
character, the courts can enforce only those limitations
which the constitution imposes; not those implied re-
strictions, which, resting in theory only, the people
have been satisfied to leave to the judgment, patriot-
ism, and sense of justice of their representatives.'
Cooley's, Const. Lim. p. 154."

"'Furthermore, we are of the view that, by common
consent, it is now generally held to be well within
a public purpose for any given locality to expend
public funds, within due limitations, for advertising
and otherwise calling attention to its natural advan-
tages, its resources, its enterprises, and its adapt-
ability for industrial sites, with the object of in-
creasing its trade and commerce and of encouraging
people to settle in that particular community.' Sacra-
mento Chamber of Commerce v. Stephens, 212 Cal. 607,
299 P. 728, 730.

Honorable Obel L. McAlister,    page 8

"McQuillin, in his 1932 Cumulative Supplement
to his work on Municipal Corporations, at pages
662, 663, says:  'Although recent decisions declare
advertising is a public purpose for which the tax-
ing power may be exercised, to authorize the levy
of any tax for this purpose or appropriate public
moneys therefor, express grant must exist, either
statutory or in home rule charters.'

"We have been unable to find any case in the
reports in which there was an express grant of power
for the purpose of advertising, that the court has
not upheld the power of the city to appropriate the
money therefor and levy a tax to defray the expense.

"In this case express authority in the home rule
charter does exist, and its exercise is not a viola-
tion of any provision of the Constitution or the
general laws of the state, and can reasonably be in-
cluded in the general powers and purposes of the
municipal government."

In the case of Miller et al vs. El Paso County, 150 S. W.
(2d) 1000, the Supreme Court held Article 2253b, Vernon's Annota-
ted Civil Statutes unconstitutional on the ground that said
statute contravenes provisions of Section 56, Article III of the
State Constitution.  This statute authorized all counties in this
State having a population of not less than 145,000 inhabitants
and not more than 175,000 inhabitants, and containing a city
having a population of not less than 90,000 inhabitants, as
shown by the last preceding Federal Census, to levy a tax of
not over five (5) cents on the valuation of 100.00 of such
county, for the purpose of advertising and promoting the
growth and development of said county and its county seat;
provided that before the Commissioner's Court of such counties
could levy any tax for such purpose, the qualified tax paying
voters of the county would have to authorize the Commissioner's
Court to levy such tax by a majority vote.

It was said in the case of Miller et al vs. El Paso County,
supra:

"Our holding that the Act is void on the grounds
above stated, renders it unnecessary for us to pass
on the other assignments raised in the briefs.  In
this connection, however, we deem it proper to call
attention to the fact that the case of Davis v. City
of Taylor, 123 Tex. 39, 67 S. W. (2d) 1033, relied

on by defendants in error as authorizing the expending of public funds for advertising purposes, dealt with a home-rule city and not a county, and that a city may exercise proprietary functions, while a county, as a mere subdivision of the State, can exercise only governmental functions."

In view of the foregoing statement by the Supreme Court, it is doubtful that the expenditure of county funds for the purpose of advertising the county is a governmental function, and that a county would be authorized to make such expenditures.

We also direct your attention to the case of Anderson et al vs. City of San Antonio, 67 S. W. (2d) 1036, wherein the Supreme Court held that neither the charter nor general laws empowered the city of San Antonio to levy a tax to advertise the city and that an ordinance authorizing such a tax levied for such purpose was invalid.

In view of the foregoing authorities and as heretofore stated, we are unable to categorically answer the question under consideration. We have called your attention to certain portions of the bill which are questionable insofar as the constitutionality of the Act is concerned.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By Ardell Williams

Ardell Williams
Assistant

AW:LJ





APPROVED
OPINION
COMMITTEE

BY
CHAIRMAN