BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE NORMAN L. VROMAN, DISTRICT ATTORNEY, COUNTY OF MENDOCINO, has requested an opinion on the following question:
May a county board of supervisors contract with a nonprofit mutual benefit corporation to promote tourism and commerce if a court has ruled that the corporation would not be performing a "function" of the county and would not be operating "on behalf of' the county as those terms are used in the statutes governing the investigative authority of a grand jury?
 CONCLUSION
A county board of supervisors may contract with a nonprofit mutual benefit corporation to promote tourism and commerce even though a court has ruled that the corporation would not be performing a "function" of the county and would not be operating "on behalf of" the county as those terms are used in the statutes governing the investigative authority of a grand jury.
 ANALYSIS
The question presented for analysis concerns a county's advertising contract with a nonprofit mutual benefit corporation to promote tourism and commerce within the county and the authority of the county grand jury to examine the books and records of the corporation. The corporation, as an independent contractor, advertises and promotes the county's agricultural products and tourism industry. Although the corporation engages in other promotional activities for the benefit of its own members, the contract with the county generates most of its income. No member of the county board of supervisors serves on the board of directors of the corporation, although the county has three representative positions on the 18-member board.
We are advised that a superior court has ruled that the county grand jury lacks statutory authority to examine the books and records of the corporation because (1) the corporation is not performing a "function" of the county (see Pen. Code, § 925 ["The grand jury shall investigate and report on the operations, accounts, and records of the officers, departments, or functions of the county..."]) and (2) although the corporation provides some benefit to the public, it is operated on behalf of all its members and not solely or even primarily "on behalf of' the county (see Pen. Code, § 933.6 ["A grand jury may at any time examine the books and records of any nonprofit corporation established by or operated on behalf of a public entity the books and records of which it is authorized by law to examine . . ."]).[1]
We are asked to determine whether, in light of the foregoing circumstances, the county board of supervisors has the legal authority to contract with the corporation for advertising and promotional services. We conclude that it does.
In Sacramento Chamber of Commerce v. Stephens (1931) 212 Cal. 607, the Supreme Court observed with respect to the use of public funds for advertising purposes:
". . . [I]t is now generally held to be well within a public purpose for any given locality to expend public funds, within due limitations, for advertising and otherwise calling attention to its natural advantages, its resources, its enterprises and its adaptability for industrial sites, with the object of increasing its trade and commerce and of encouraging people to settle in that particular community." (Id. at p. 612.)
Statutory authority for a county to spend its funds to promote tourism and commerce is found in Government Code section 26100, which states:
"(a) The board of supervisors may levy a special tax . . . for the purpose of inducing immigration to, and increasing the trade and commerce of, the county. The proceeds of the tax may be expended for any or all of the following uses:
"(1) Advertising, exploiting, and making known the resources of the county.
"(2) Exhibiting or advertising the agricultural, horticultural, viticultural, mineral, industrial, commercial, climatic, educational, recreational, artistic, musical, cultural, and other resources or advantages of the county.
"(3) Making plans and arrangements for a world's fair, trade fair, or other fair or exposition at which such resources may be exhibited.
"(4) Doing any of such work in cooperation with or jointly by contract with other agencies, associations, or corporations.
"(b) The board may also appropriate for the purposes of this chapter any moneys accruing to the general fund derived pursuant to Section7280 of the Revenue and Taxation Code."[2]
However, as we noted in 66 Ops.Cal.Atty.Gen. 451, 452 (1983) regarding the possible sources of funding for an advertising campaign:
"With the adoption in 1978 of article XIII A to the Constitution, as implemented by the Legislature (see Rev. Tax. Code, §93), the levy of a special ad valorem property tax pursuant to the terms of section 26100 is generally prohibited. (See 62 Ops.Cal.Atty.Gen. 747, 748-753 (1979); 62 Ops.Cal.Atty.Gen. 655, 655-657 (1979).)
"Hence, counties with advertising budgets no longer use the special property tax levy authorization contained in section 26100 to generate funds. Instead, the authority of Revenue and Taxation Code section 7280 may be used to levy transient occupancy taxes. . . . Pursuant to section (b) of section 26100, the transient occupancy tax revenues may then be appropriated for county advertising purposes."
In complying with the terms of Government Code section 26100, may a county contract for the services of a non-governmental entity to carry out its advertising and promotional activities? We answered this question in 28 Ops.Cal.Atty.Gen. 326, 330-331 (1956):
"In addition to the assistance obtained from [a county board of trade or county chamber of commerce], the board of supervisors could also enter into a contract with a private organization for it to carry out the performance of the advertising purposes that the board has specified. The leading case on this problem is Chamber of Commerce v. Stephens,212 Cal. 607, involving the City of Sacramento. Sacramento is a chartered city and the question considered by the opinion was whether under the pertinent charter provisions the city could, pursuant to contract, pay the local chamber of commerce, a private organization, for a portion of the expense of preparing and publishing a booklet extolling Sacramento and for other similar work. The charter provisions considered were similar to the provisions of sections 26100 and following, and the reasoning and conclusions of the court would be equally applicable to those sections. The California Supreme Court held that it was the responsibility of the governing body of the city to determine in the first place whether funds should be spent for a designated advertising purpose, and this responsibility could not be surrendered to another body; but, this determination having been made, it was perfectly proper for the governing body to employ a suitably qualified organization to carry out the purpose designated. . . .
"Therefore, in the first instance the board of supervisors must specify the uses or purposes for which it desires to expend the proceeds of the advertising special tax. Having done this, it may allocate the funds to a non governmental agency to perform the purposes specified." (Id. at pp. 330-331.)
Government Code section 31000 provides additional statutory authority for a county to contract with a non-governmental entity for advertising and promotional services. It states:
"The board of supervisors may contract for special services on behalf of the following public entities: the county, any county officer or department, or any district or court in the county. Such contract shall be with persons specially trained, experienced, expert and competent to perform the special services. The special services shall consist of services, advice, education or training for such public entities or the employees thereof. The special services shall be in financial, economic, accounting (including the preparation and issuance of payroll checks or warrants), engineering, legal, medical, therapeutic, administrative, architectural, airport or building security matters, laundry services or linen services. They may include maintenance or custodial matters if the board finds that the site is remote from available county employee resources and that the county's economic interests are served by such a contract rather than by paying additional travel and subsistence expenses to existing county employees. The board may pay from any available funds such compensation as it deems proper for these special services. . . ."
In Darley v. Ward (1982) 136 Cal.App.3d 614, 627-628, the court described "special services" that may be contracted under the provisions of Government Code section 31000 as follows:
"Whether services are special requires a consideration of factors such as the nature of the services, the qualifications of the person furnishing them and their availability from public sources. [Citation.] Services may be special because of the outstanding skill or expertise of the person furnishing them. [Citations.] Whether services are special is a question of fact. [Citations.]"
We believe that specialized professional services designed to promote tourism and commerce may be considered "economic" or "administrative" services as these terms are normally understood. (See Service EmployeesInternat. Union v. Board of Trustees (1996) 47 Cal.App.4th. 1661 [management of a college bookstore determined to be a "special service"].)
On the other hand, the statutes governing the authority of a grandjury to investigate the functions of a county and certain nonprofit corporations do not purport to restrict or limit a county's statutory authority to contract for advertising or any other type of services. Moreover, there would be no inconsistency between the court's findings as to the grand jury's investigative authority and the authority of the county to contract with the corporation. We reject the suggestion that the county may contract with the corporation in question only if the corporation is performing a "function" of the county (§ 925) or is being operated "on behalf of' the county (§ 933.6) for purposes of a grand jury's investigation authority.
Specifically, section 925 states:
"The grand jury shall investigate and report on the operations, accounts, and records of the officers, departments, or functions of the county including those operations, accounts, and records of any special legislative district or other district in the county created pursuant to state law for which the officers of the county are serving in their ex officio capacity as officers of the districts. . . ."
The meaning of the phrase "functions of the county" contained in section925 was recently analyzed in Board of Retirement v. Santa BarbaraCounty Grand Jury (1997) 58 Cal.App.4th 1185. There the court considered whether a grand jury had the authority to investigate a county board of retirement. The court found that the board, through the use of county' employees, was performing a "function" of the county:
". . . If the county chooses to participate in the 1937 Retirement Act system, the Board must be funded by the county, its employee-members and the participating local districts. [Citations.] The Board's staff are county employees, although management of the system is vested in the Board. [Citations.] The Board does function for the county and local districts using taxpayer funds. [Citation.]
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
". . . Because the Board operates to run the pension system for county workers, retirees and local district members using substantial county funds, it performs functions for the county. Indeed, counsel for the Board admitted before the trial court that the county has duties and functions regarding the Board.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"Here, the grand jury serves its respected watchdog role by investigating whether the Board timely performs one of its essential functions, processing applications for disability retirements for county and local district employees. [Citations.]" (Id. at pp. 1191-1192.)
Unlike the county board of retirement in the Santa Barbara case, the private corporation here is not performing a "function" of the county when it contracts to provide advertising and promotional services. Advertising is not a government "function" such as operating a pension system for county employees or providing sheriff or fire protection services.[3]
The corporation is acting as an independent contractor; its staff is made up of its own private employees, not county employees. Simply put, the corporation cannot be characterized as performing the "functions of the county" for purposes of section 925.[4]
Our construction of the language of section 925 is confirmed by our analysis of section 933.6. The latter statute authorizes a grand jury to investigate certain nonprofit corporations:
"A grand jury may at any time examine the books and records of any nonprofit corporation established by or operated on behalf of a public entity the books and records of which it is authorized by law to examine, and, in addition to any other investigatory powers granted by this chapter, may investigate and report upon the method or system of performing the duties of such nonprofit corporation."
Section 933.6 was enacted in 1986 (Stats. 1986, ch. 279, § 2), after section 925's enactment in 1977 (Stats. 1977, ch. 107, § 3), and was intended to bring specified nonprofit corporations within the scope of a grand jury's investigation authority. Prior to that time, no nonprofit corporations were subject to a grand jury's review authority. (See, e.g., Sen. Coin. on Judiciary, Rep. on Assem. Bill No. 3643 (1985-1986 Reg. Sess.) as amended May 7, 1986.) Hence, if the corporation here is subject to the investigative power of the grand jury, it must come from the application of section 933.6 rather than section925. (See Daily Journal Corp. v. Superior Court (1999)20 Cal.4th 1117, 1125.)
With respect to the provisions of section 933.6, the fact that a nonprofit corporation receives substantially all of its income from contracts with a county does not mean that it is "operated on behalf of' the county. Here, the corporation's actions, as an independent contractor, are not subject to the control of the county except as to the results of its efforts. (See Lab. Code, § 3353 ["`Independent contractor' means any person who renders service for a specified recompense for a specified result, under control of his principal as to the result of his work only and not as to the means by which such result is accomplished"]; White v. Uniroyal, Inc. (1984) 155 Cal.App.3d 1,24-25.) Neither would the corporation be acting as the county's agent since it has not contracted to represent the county in dealings with third parties. (See Civ. Code, § 2295 ["An agent is one who represents another, called the principal, in dealings with third persons"]; Channel Lumber Co. v. Porter Simon (2000) 78 Cal.App.4th 1222,1227-1229.)
Nor do we have the situation where a nonprofit corporation is created by a local agency (see Epstein v. Hollywood Entertainment Dist. II Bus.Improvement Dist. (2001) 87 Cal.App.4th 862) or where a local agency uses a nonprofit corporation to administer one of its basic functions (see 81 Ops.Cal.Atty.Gen. 281 (1998) [community redevelopment agency used nonprofit corporation to administer its housing activities; corporation required to comply with the same laws and regulations as the agency].) Moreover, as previously mentioned, no one from the county board of supervisors serves on the corporation's board of directors. (See Gov. Code, § 54952, subd. (c)(1)(B).)
Accordingly, the corporation is not the type of nonprofit corporation that the Legislature has made subject to a grand jury's investigative authority under the terms of section 933.6. Although it relies primarily on the county for its source of income and is engaged in activities that are beneficial to the county's interests, it lacks the "public" character of a nonprofit corporation that is "operated on behalf of' the county as that phrase is used in section 933.6.
We conclude that a county board of supervisors may contract with a nonprofit mutual benefit corporation to promote tourism and commerce even though a court has ruled that the corporation would not be performing a "function" of the county and would not be operating "on behalf of" the county as those terms are used in the statutes governing the investigative authority of a grand jury.[5]
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] Section 7280 of the Revenue and Taxation Code authorizes the imposition of a transient occupancy tax (commonly known as the hotel and motel room tax).
[3] The legislative history of section 925 supports the conclusion that the term "functions" refers to traditional public services. When the term "functions" was added to the statute (Stats. 1977, ch. 107, § 3), no indication was given that the Legislature intended to expand a grand jury's investigative authority beyond the usual purposes and services for which a county exists.
[4] Of course, a grand jury may "investigate and report on the operations . . . of the officers [and] departments . . . of the county" (§ 925) that are responsible for negotiating the contract with the corporation in question.
[5] In light of the conclusion reached, it is unnecessary to address additional questions presented concerning the constitutional prohibition against the making of gifts of public funds.